STATE OF NORTH CAROLINA v. DELLWYN R. JOHNSON

No. COA00-780

(Filed 17 July 2001)

## 1. Discovery— motion to quash subpoenas duces tecum—in camera inspection

The trial court erred in a first-degree rape and indecent liberties case by granting the motion to quash subpoenas duces tecum issued by defendant teacher to the attorneys for the board of education and to an individual of the board of education seeking records compiled during the board's investigation of the charges against defendant, because: (1) there is no indication the trial court made the proper inquiry into the requested documents; and (2) the trial court must conduct an in camera inspection of the requested documents to determine whether documents exist containing information material to defendant's guilt or innocence.

**2. Rape; Sexual Offenses— first-degree rape—indecent liberties—motion to dismiss—alleged variance between evidence and bill of particulars—window of time**

The trial court did not err in a first-degree rape and indecent liberties case by denying defendant's motion to dismiss based on an alleged variance between the evidence at trial and the State's responses to defendant's request for a bill of particulars regarding the window of time in which the alleged crimes took place, because: (1) the State is not required to forecast exact dates and times in its indictments when time is not of the essence for the charges of first-degree rape or taking indecent liberties; and (2) the testimony at trial was not inconsistent with the State's indictments or its bill of particulars.

**3. Evidence— prior crimes or acts—victim's testimony of sexual acts committed by defendant—common plan or scheme**

The trial court did not err in a first-degree rape and indecent liberties case by admitting the testimony of a prior victim as to sexual acts committed against her by defendant teacher, because N.C.G.S. § 8C-1, Rule 404(b) allows this evidence to show an ongoing plan or scheme by defendant to commit sexual offenses against female students and other young women.

**4. Evidence— cross-examination of detective—limitation**

The trial court did not abuse its discretion in a first-degree rape and indecent liberties case by limiting the scope of defendant's cross-examination of a detective, because: (1) defendant has made no showing that the trial court's limitation of the cross-examination improperly influenced the verdict; and (2) defendant was permitted to question the victims regarding the specific dates and times of the offenses.

Appeal by defendant from judgments entered 7 October 1999 by Judge Henry E. Frye, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 30 May 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Jane T. Hautin, for the State.*

*Duane K. Bryant for defendant-appellant.*

**STATE v. JOHNSON**

[145 N.C. App. 51 (2001)]

MARTIN, Judge.

Defendant was charged with two counts of first degree rape in violation of G.S. § 14-27.2, and multiple counts of taking indecent liberties with children in violation of G.S. § 14-202.1. Defendant entered pleas of not guilty.

Briefly summarized, the evidence at trial tended to show that defendant was employed at Mendenhall Middle School in the Guilford County School System as a teacher and coach during the period of the alleged criminal acts. Most of the victims were students at Mendenhall from 1983 to 1993, when the crimes were allegedly committed by defendant. Tosha Manuel testified that during the summer of 1987, when she was twelve years old, defendant drove her from the Warnersville pool to Mendenhall and had sexual intercourse with her on a mat on the gym stage. Ms. Manuel testified that she had sexual intercourse with defendant on at least two other occasions in 1987. When Ms. Manuel moved on to high school, she and defendant continued to have a sexual relationship; the sexual contact ended in 1995, when Ms. Manuel was in college. Ms. Manuel's mother, father, and brother testified at trial that Ms. Manuel had reported to them having had sexual intercourse with defendant beginning in the seventh grade.

Terri Colson testified that in 1983 or 1984, when she was 14 or 15 years old, defendant engaged in sexual intercourse with her on a gymnasium mat at the school; she further testified that defendant had intercourse with her on two other occasions that school year. Angela Morgan Cooper testified that defendant had sexual intercourse with her on several occasions during the summer before she entered the eighth grade. Cooper was thirteen at the time. Roxanne Doyle testified that defendant, who had been her seventh grade gym coach, french-kissed her on the school gym stage during the summer after her eighth grade year, when she was 14 years old; during this incident defendant also put his hand up Ms. Doyle's shirt and felt her breast. Ms. Doyle testified that defendant instructed her to relax and that he would teach her how to be comfortable sexually with her boyfriend. Defendant then persuaded her to lie on the gym mats, but when defendant attempted to climb on top of her, she pushed him aside and ran to the bathroom.

Debra Smith testified that she met defendant at the Warnersville Pool in the summer of 1988, when she was thirteen years old. Defendant asked her to accompany him to the store one day, but

instead he drove her to his home where they had sexual intercourse. According to Ms. Smith's testimony, she and defendant had sexual intercourse on other occasions in 1988 and 1989.

In addition to the testimony of the victims named in the bills of indictment, the State also offered the testimony of Betrice Gardner pursuant to G.S. § 8C-1, Rule 404(b). Ms. Gardner testified that she met defendant when she was sixteen years old after he approached her and offered to help her gain an athletic scholarship for college. According to her testimony, defendant began coaching Ms. Gardner during her senior year at Ben L. Smith High School in 1985. One day in defendant's office, defendant french-kissed Ms. Gardner; he later explained that he wanted to prepare her for college by demonstrating how a man should treat a woman and what to expect from a man. Defendant and Ms. Gardner eventually had sexual intercourse on mats on the gym stage at Mendenhall Middle School. They also had sex in defendant's car and at his home.

The Greensboro Police Department served the Guilford County Board of Education with a search warrant seeking defendant's personnel files in November 1998. As a result, the Board conducted an investigation into the charges against defendant. Prior to trial, defendant served subpoenas *duces tecum* on the Board of Education seeking production of records compiled during the Board's investigation which might be material to defendant's guilt or innocence. The trial court granted the Board's motion to quash the subpoenas *duces tecum*.

The jury returned verdicts finding defendant guilty of two counts of first degree rape and twelve counts of taking indecent liberties with children. Defendant appeals from the judgments entered upon the verdicts.

---

I.

[1] Defendant first argues the trial court erred when it granted the motion to quash the subpoenas *duces tecum* issued by defendant to the attorneys for the Guilford County Board of Education and to Shirley Morrison of the Guilford County Board of Education. His argument has merit.

It is well established that a defendant has a due process right to any information material to his guilt or innocence. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 94 L. Ed. 2d 40, 57 (1987) (citing *Brady v.*

*Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963)). Nevertheless, a government entity has a statutorily protected right to maintain confidential records containing sensitive information such as child abuse. *Id.* The Supreme Court held that in such circumstances, a defendant's due process rights are adequately protected by an *in camera* review of the files of the government agency, after which the trial court must order the disclosure of any information discovered which is material to the defendant's guilt or innocence. *Id.*

The North Carolina Supreme Court considered the duties of the trial court confronted with a request for records compiled on a victim of child abuse by social services agencies and a school board in *State v. Phillips*, 328 N.C. 1, 399 S.E.2d 293, *cert. denied*, 501 U.S. 1208, 115 L. Ed. 2d 977 (1991). The defendant in *Phillips* sought, among other things, school records of the victim and three child witnesses. The Supreme Court held: "[a] judge is required to order an *in camera* inspection and make findings of fact concerning the evidence at issue only if there is a possibility that such evidence might be material to guilt or punishment and favorable to the defense." *Id.* at 18, 399 S.E.2d at 301 (citation omitted). The trial court in *Phillips* reviewed the confidential records *in camera,* including those records in the possession of the Bladen County Board of Education, then entered an order declaring that no information in the records was either relevant or material. *Id.* at 18, 399 S.E.2d 301-02. The trial court then sealed the records for appellate review. The Supreme Court reviewed these records and affirmed the decision of the trial court, concluding that the records were not subject to discovery by the defendant. *Id.*

In the present case, we cannot ascertain whether the trial court followed the procedure required by *Ritchie* and *Phillips*. In its Order Quashing Subpoenas of Defendant, there is no indication the trial court made the proper inquiry into the requested documents. The court noted the Guilford County Board of Education's argument that, "for the most part," the documents requested were protected as privileged and work product and were therefore "not discoverable." However, at the evidentiary hearing, the attorney for the School Board acknowledged:

> Now, there are some documents, I would acknowledge, some documents that were—that we received from some of the witnesses and this was part of our investigative file. Now, I don't claim that those documents are attorney/client privileged or subject to work product.

STATE v. JOHNSON

[145 N.C. App. 51 (2001)]

The court nevertheless quashed the subpoenas, concluding, "[t]hat the documents subpoenaed are privileged and work products of School Board Attorney's [sic]." Because we cannot determine from this record whether material documents in the possession of the Guilford County Board of Education or its attorneys exist, we must remand this case to the trial court with instructions to conduct an *in camera* inspection of the requested documents and to determine whether any such documents exist which contain information material to defendant's guilt or innocence. If no such documents exist, or if the non-disclosure of the documents was harmless error, the trial court is instructed to re-enter judgment against defendant; if, on the other hand, material documents exist, defendant is entitled to a new trial. *Ritchie*, 480 U.S. at 58, 94 L. Ed. 2d at 58.

II.

[2] Defendant next assigns error to the trial court's denial of his motion to dismiss because of the alleged "variances" between the evidence presented at trial and the State's responses to defendant's request for a bill of particulars. This argument is without merit.

In *State v. Effler*, 309 N.C. 742, 309 S.E.2d 203 (1983), the North Carolina Supreme Court rejected the contention that the defendant was denied a fair trial because the bill of particulars and the evidence presented at trial did not precisely establish the date and time of the alleged rape:

[A] child's uncertainty as to the time or particular day the offense charged was committed goes to the weight of the testimony rather than its admissibility, and nonsuit may not be allowed on the ground that the State's evidence fails to fix any definite time when the offense was committed where there is sufficient evidence that the defendant committed each essential act of the offense.

*Id.* at 749, 309 S.E.2d at 207 (citing *State v. King*, 256 N.C. 236, 123 S.E.2d 486 (1962)). In *State v. Burton*, 114 N.C. App. 610, 442 S.E.2d 384 (1994), the defendant challenged his convictions of incest, rape, and taking indecent liberties with minors on the ground that the State failed to offer sufficient evidence that the crimes occurred within the time periods noted in the indictments. This Court sustained the convictions, holding that the " 'variance between allegation and proof as to time is not material where no statute of limitations is involved.' " *Id.* at 612, 442 S.E.2d at 385 (citation omitted). Indeed, " 'the date

given in the bill of indictment is not an essential element of the crime charged and the fact that the crime was in fact committed on some other date is not fatal.' " *Id.* at 612, 442 S.E.2d at 386 (citing *State v. Norris*, 101 N.C. App. 144, 151, 398 S.E.2d 652, 656 (1990), *disc. review denied*, 328 N.C. 335, 402 S.E.2d 843 (1991)).

> In cases involving allegations of child sex abuse, temporal specificity requirements are further diminished. Children frequently cannot recall exact times and dates; accordingly, a child's uncertainty as to the time of the offense goes only to the weight to be given that child's testimony. Judicial tolerance of variance between the dates alleged and the dates proved has particular applicability where, as in the case *sub judice*, the allegations concern instances of child sex abuse occurring years before. (citations omitted).

*Id.* at 613, 442 S.E.2d at 386. The purpose of a bill of particulars is " 'to inform defendant of specific occurrences intended to be investigated at trial and to limit the course of the evidence to a particular scope of inquiry.' " *State v. Jacobs*, 128 N.C. App. 559, 565, 495 S.E.2d 757, 762, *disc. review denied*, 348 N.C. 506, 510 S.E.2d 665 (1998) (citation omitted). When time is not of the essence of the crime charged, such as first degree rape and taking indecent liberties with children, the State is not required to forecast exact dates and times in its indictments. *State v. McKinney*, 110 N.C. App. 365, 430 S.E.2d 300, *disc. review denied*, 334 N.C. 437, 433 S.E.2d 182 (1993).

In the present case, the State provided defendant with a bill of particulars and later with an amended bill of particulars. In each case, the State presented a window of time in which defendant allegedly raped or took indecent liberties with the respective victims. At trial, Tosha Manuel testified that during the summer of 1987, when she was twelve years old, defendant drove her to Mendenhall and had sexual intercourse with her; she also testified that she had sexual intercourse with defendant on at least two other occasions in 1987. Terri Colson testified that in 1983 or 1984, when she was 14 or 15 years old, defendant engaged in sexual intercourse with her on a gymnasium mat at the school; she further testified that defendant had intercourse with her on two other occasions that school year. Angela Morgan Cooper testified that defendant had sexual intercourse with her on several occasions during the summer before she entered eighth grade, when Cooper was thirteen years old. Roxanne Doyle testified that defendant french-kissed her and felt her breast during the sum-

mer after her eighth grade year, when she was 14 years old. Finally, Debra Smith testified that defendant drove her to his home where they had sexual intercourse. According to Ms. Smith's testimony, she and defendant had sexual intercourse on other occasions in 1988 and 1989. The testimony at trial was not inconsistent with the State's indictments or its bills of particulars. This assignment of error is overruled.

### III.

**[3]** Defendant next contends the trial court erred in admitting the testimony of Betrice Garner as to sexual acts committed against her by defendant. Evidence of other crimes or acts is inadmissible for the purpose of showing the character of the accused or for showing his propensity to act in conformity with a prior act. N.C. Gen. Stat. § 8C-1, Rule 404(b). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident." *Id.* The North Carolina Supreme Court has held that Rule 404(b) is a rule of inclusion. *State v. Golphin*, 352 N.C. 364, 533 S.E.2d 168 (2000). Indeed, North Carolina's appellate courts have been "markedly liberal in admitting evidence of similar sex offenses to show one of the purposes enumerated in Rule 404(b)." *State v. Scott*, 318 N.C. 237, 247, 347 S.E.2d 414, 419 (1986) (citations omitted).

The use of evidence under Rule 404(b) is guided by two constraints: "similarity and temporal proximity." *State v. Artis*, 325 N.C. 278, 299, 384 S.E.2d 470, 481 (1989), *vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990).

> When the features of the earlier act are dissimilar from those of the offense with which the defendant is currently charged, such evidence lacks probative value. When otherwise similar offenses are distanced by significant stretches of time, commonalities become less striking, and the probative value of the analogy attaches less to the acts than to the character of the actor.

*Id.*

In the present case, the State offered the testimony of Betrice Gardner under Rule 404(b) to show an ongoing plan or scheme to commit sexual offenses against female students and other young women. Betrice Gardner met defendant when she was a sixteen-year-old high school student; defendant approached her and offered to help her with her basketball skills so she could win an athletic

scholarship. Defendant later explained to Ms. Gardner that he wanted to prepare her for dating men in college by demonstrating "how a man should treat" her. Defendant eventually had sexual intercourse with Ms. Gardner on the mats on the gym stage at Mendenhall, the same location where he allegedly had sexual intercourse with some of the victims in these cases. Ms. Gardner also testified that she had sex with defendant in his car and in his home, often after practicing basketball. The trial court instructed the jury that the testimony of Ms. Gardner was being offered "solely for the purpose of showing that there existed in the mind of the defendant a plan, scheme, system or design involving the crimes charged in this case. If you believe this evidence, you may consider it but only for the limited purpose for which it is being received." Because defendant's alleged contact with Ms. Gardner and the sexual offenses committed against the victims in this case were sufficiently similar, and because the acts involving Ms. Gardner occurred in 1985, which is during the period of the alleged sexual crimes, we hold Ms. Gardner's testimony was admissible under Rule 404(b). Moreover, for the reasons explained above, we also hold that it was not an abuse of discretion for the trial court to admit Ms. Gardner's testimony under Rule 403. *State v. Everhardt*, 96 N.C. App. 1, 384 S.E.2d 562 (1989), *affirmed*, 326 N.C. 777, 392 S.E.2d 391 (1990).

IV.

**[4]** Defendant next alleges the trial court erred in limiting the scope of defendant's cross-examination of Detective Michael Loy. This argument is without merit.

A trial court "has broad discretion over the scope of cross-examination." *State v. Call*, 349 N.C. 382, 411, 508 S.E.2d 496, 514 (1998) (citation omitted). Further, the long-standing rule in North Carolina is that the trial court's rulings regarding the scope of cross-examination "will not be held in error in the absence of a showing that the verdict was improperly influenced by the limited scope of the cross-examination." *State v. Woods*, 307 N.C. 213, 221, 297 S.E.2d 574, 579 (1982) (citations omitted).

In the present case, defendant has made no showing that the trial court's limitation of the cross-examination of Detective Loy improperly influenced the verdict. The State offered Loy's testimony for the limited purpose of rebutting the testimony of Jacqueline Walker Benner, who denied at trial that she ever made a statement that she had sexual contact with defendant when she was a student

at Mendenhall. Defendant alleges that if he had been permitted to ask Detective Loy questions about specific dates and times of the alleged sexual offenses involving other victims, he could have possibly raised a reasonable doubt as to defendant's guilt in the minds of the jurors. Defendant, however, was permitted to question the victims regarding specific dates and times of the offenses. Moreover, as explained above, time is not an essential element of the crimes of first degree rape and taking indecent liberties with children. *State v. Norris*, 101 N.C. App. 144, 398 S.E.2d 652 (1990), *disc. review denied*, 328 N.C. 335, 402 S.E.2d 843 (1991). For these reasons, the trial court did not abuse its discretion in limiting defendant's cross examination of Detective Loy.

Finally, because defendant offers no argument in support of his remaining assignments of error, they are deemed abandoned. N.C.R. App. P. 28(a), 28(b)(5).

No error in part; remanded for further proceedings in accordance with this opinion.

Judges HUNTER and HUDSON concur.